Argued and submitted March 6, ballot title certified March 19, 1985

# CRUMPTON et al,
*Petitioners,*

*v.*

# ROBERTS,
*Respondent.*

## (SC S31516)

697 P2d 180

Henry H. Drummonds, Portland, argued the cause for petitioners. With him on the petition was Paul B. Gamson, Portland.

John R. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the response to the petition was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Roberts and Carson, Justices.

LENT, J.

## LENT, J.

A prospective petition for a state measure to be initiated has been filed with the respondent pursuant to ORS 250.045. Acting under ORS 250.065(2), the respondent has sent copies of the measure to the Attorney General, who has provided to the respondent a ballot title for the measure pursuant to ORS 250.065(3). The provided title follows:

"AMENDS CONSTITUTION: REDUCES PROPERTY TAX RATE OVER THREE YEAR PERIOD

"QUESTION: Shall Constitution cut real property tax rates, limit assessed value increases and tax elections, and require elections for new taxes?

"EXPLANATION: Constitutional amendment cuts allowable property tax rate 10% per year over three years to 70% of 1984-85 rates. Freezes maximum rate after third year. Exempts taxes for existing bonds. Limits assessed value growth to 2% annually. Majority of electors must approve new or increased taxes. Limits tax elections to two each year and requires vote by mail option. Limits license, user, service fees to actual cost of service. Continues low income homeowner, renter tax relief."

Petitioners[1] in this court allege that they are persons dissatisfied with the title provided by the Attorney General and seek, pursuant to ORS 250.085(1), a different title, averring that the provided title is insufficient and unfair in various particulars.

Petitioners aver that the provided 10-word caption is insufficient and unfair because it is "misleading." They allege that the caption suggests that the effect of the measure is "complete" after three years, but actually the measure would "affect the future far beyond three years." They ask that the reference to "three years" be deleted.

---

[1] The person who files with the Secretary of State a prospective petition under ORS 250.045 is denominated a "petitioner" by that code section. A challenge to a ballot title provided to the Secretary of State by the Attorney General takes the form of a "petition" to this court. Because one who petitions a court is usually denominated a petitioner in the court proceedings, we have the unfortunate happenstance of a statutory procedure governing two distinct sets of persons, each set known as petitioners. Where we use the word "petitioners" in this opinion, we refer to the persons challenging the sufficiency and fairness of the provided title.

Petitioners also urge that the caption is insufficient and unfair because it omits "reference to a major change in the democratic voting system." This contention arises from the text of subsection (5) of the measure, which provides that a taxing unit "shall not increase a tax rate or special assessment or levy a new tax or special assessment, if such action would cause an increase in governmental revenues, unless such action is approved by a majority vote of the electors of the taxing unit." Petitioners argue that this text requires an affirmative vote of the majority of all registered voters in the taxing unit rather than a majority of those who vote.

The statute, ORS 250.035(1)(a), directs that the caption shall be "not more than 10 words by which the measure is commonly referred to." The respondent argues correctly that this court less than a year ago in *Ferry v. Paulus,* 297 Or 70, 682 P2d 262 (1984), stated that it was the responsibility of this court to apply the statutory text. That text speaks to identification of a measure, not to its summarization.

As was the case with respect to the ballot title before us in *Ferry v. Paulus, supra,* neither the petitioners nor the respondent has argued to us that there are presently extant words by which this particular measure is "commonly referred to." In *Ferry v. Paulus, supra,* we implied that where such words did not exist, the caption might attempt the necessary identification by using words by which the measure will be commonly referred to in circulating petitions and in electioneering if that stage is reached. We did so by directing attention to *Young v. Neuner et al,* 178 Or 625, 630, 169 P2d 124 (1946), which employed that very course in addressing the sufficiency of a caption.

One of the chief "petitioners," in the ORS 250.045 sense as sponsor of this measure, has been instrumental in gaining a place on the ballot for somewhat similar measures in several recent elections. The election year, measure number and caption for those measures were as follows:

1978, No. 6, "LIMITATIONS ON AD VALOREM PROPERTY TAXES."

1980, No. 6, "CONSTITUTIONAL REAL PROPERTY TAX LIMIT PRESERVING 85% DISTRICTS' 1977 REVENUE."

1982, No. 3, "CONSTITUTIONAL REAL PROP-
ERTY TAX LIMIT PRESERVING 85%
DISTRICTS' 1979 REVENUE."

1984, No. 2, "CONSTITUTIONAL REAL PROP-
ERTY TAX LIMIT."

It is reasonable to infer that this latest effort may be identified in like terms.

■ The provided caption identifies the measure as one that would amend the constitution and reduce property taxes. That caption is neither unfair nor insufficient to carry out the mandate of ORS 250.035(1)(a).

Under ORS 250.035(1)(b) a ballot title must also contain a question in not more than 20 words which plainly states the purpose of the measure in such terms that an affirmative answer to the question corresponds to an affirmative vote on the measure. The petitioners propose a differently worded question from that provided by the Attorney General, but their petition does not directly specify any perceived insufficiency or unfairness in the provided question. Petitioners propose:

"QUESTION: Shall Constitution limit property tax rates, assessed values, and limit power of majority voting to approve of revenue increases?"

The first part of petitioners' proposed question is clearly insufficient and unfair in failing to state that the measure would not only limit, but more importantly would reduce, property tax rates. The second part of petitioners' proposed question, if adopted by this court, would tentatively decide an issue of law not yet presented and briefed adversarially in the context of a judicial controversy. Although the text of subsection (5), quoted above, may arguably mean something akin to petitioners' proposed question, that is by no means certain.

■ In light of the foregoing and the absence of any direct allegation of insufficiency or unfairness in the Attorney General's provided question, we decline to order any change in the question provided.

The third part of a ballot title must consist of "a concise and impartial statement of not more than 75 words of the chief purpose of the measure." Petitioners allege that the

explanation provided is "misleading." Although that adjective is not one of those specified in ORS 250.085(1), we take it to be a claim of unfairness or of insufficiency, or both.

Petitioners' point is that the text of subsection (5) of the measure above quoted would require for passage of a measure enhancing governmental revenues that a majority of *all registered voters* in the taxing unit vote affirmatively rather than only a majority of those voting. Petitioners urge that this is a "drastic switch" from the principle that a majority of those voting should determine an issue. This, they say, flies in the face of democratic principles. They contend that any registered voter who does not vote is effectively counted as a "no" vote and pose the hypothetical case that if 49.9% of the electorate voted, all affirmatively, the measure would nevertheless fail because 51.1% of the "electors" of the taxing unit would have to be counted as if they were voting against the measure. They contend that this is important because it changes the democratic principle of majority rule to "government by the apathetic."

Petitioners may or may not be correct in their contention as to the effect of the text of subsection (5), but the most that can be said is that the language is capable of several interpretations, not all of which have been discussed by these parties or in this opinion. At any rate, it is not our function to interpret that language in this proceeding.

The respondent notes that petitioners have attacked a single sentence in the explanation, namely, "Majority of electors must approve new or increased taxes." The respondent defends this wording by stating the proposition that it is appropriate to use the words of the measure in cases where arguments can be made that terms are susceptible of different meanings. *See Binninger v. Paulus,* 297 Or 179, 182, 681 P2d 129 (1984). We agree; however, the sentence does not use the wording of the measure. In this respect we believe the proposition invoked by the respondent is applicable and that the words of the measure should be employed in the explanation. This may be accomplished by a rather minor rewording of the sentence:

"Majority vote of electors of taxing unit required to approve new or increased taxes."

Because this rewording adds five words to the sentence under scrutiny, it is necessary to make other minor changes in the text of the explanation to stay within the statutory limit of 75 words. In doing so we do not intend to change the meaning of the explanation as provided by the Attorney General. We approve the following explanation:

"EXPLANATION: Constitutional amendment cuts allowable property tax rate 10% per year over three years to 70% of 1984-85 rates. Freezes maximum rate thereafter. Exempts taxes for existing bonds. Limits assessed value growth to 2% annually. Majority vote of electors of taxing unit required to approve new or increased taxes. Limits tax elections: two each year. Requires mail vote option. Limits license, user, service fees to actual cost of service. Continues low income homeowner, renter tax relief."

Despite the fact that the petitioners have not pinpointed any further claims of insufficiency or unfairness in the provided explanation, they propose an explanation with significant differences, thus, at the most, only impliedly challenging the sufficiency and fairness of the provided explanation. The respondent has addressed each proposal in her response to the petition. In each case the implied challenge and the response thereto raise questions of interpretation that are not properly to be addressed in this proceeding. We state nothing here as to the merits of the resolution of those differences of opinion between petitioners and respondent.

The ballot title provided by the Attorney General is insufficient only in the single particular discussed above, and pursuant to ORS 250.085(3) we certify to the respondent, Secretary of State, the following title:

"AMENDS CONSTITUTION: REDUCES PROPERTY TAX RATE OVER THREE YEAR PERIOD

"QUESTION: Shall Constitution cut real property tax rates, limit assessed value increases and tax elections, and require elections for new taxes?

"EXPLANATION: Constitutional amendment cuts allowable property tax rate 10% per year over three years to 70% of 1984-85 rates. Freezes maximum rate thereafter. Exempts taxes for existing bonds. Limits assessed value growth to 2% annually. Majority vote of electors of taxing unit

required to approve new or increased taxes. Limits tax elections: two each year. Requires mail vote option. Limits license, user, service fees to actual cost of service. Continues low income homeowner, renter tax relief."

It is so ordered.